NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0199n.06

No. 12-3150

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Feb 22, 2013**
DEBORAH S. HUNT, Clerk

CHRISTOPHER B. JUSTICE,

    Plaintiff-Appellant,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE:  BATCHELDER, Chief Circuit Judge; DAUGHTREY and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Christopher Brian Justice appeals the district court's order reviewing the final decision of the Commissioner of Social Security, which denied Justice's application for disability benefits.  Justice argues that his impairments meet the requirements of listing 12.05C of 20 C.F.R. § 404.1520 and that the Commissioner erred by not considering evidence of his mental impairments in determining that he would be able to perform substantial gainful activity.  Because the Commissioner's conclusions—that Justice failed to meet the requirements of listing 12.05C and was capable of performing alternative substantial gainful activity—were supported by substantial evidence, the district court properly upheld the denial of Justice's application for disability benefits.

Mr. Justice seeks disability benefits because of his physical and mental impairments. To receive disability benefits, an applicant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Justice claims that he is mentally retarded. Mental retardation can qualify as a mental impairment if it meets the requirements of one of the listings in 20 C.F.R. § 404, Subpart P, App. 1. After filing for disability benefits in January 2007, Justice's application was denied by the Commissioner, initially and on reconsideration. His case then came before an administrative law judge (ALJ), who also denied his application for benefits.

At Justice's hearing, the ALJ considered the contradictory reports of several medical experts. First, psychologist Dr. Sudhir Dubey diagnosed Justice with mild mental retardation and a generalized anxiety disorder. Dr. Dubey found that Justice exhibited appropriate reasoning, judgment, and insight, and was able to adequately manage normal activities of daily living. On the Wechsler Adult Intelligence Scale-III test, Justice scored a Verbal IQ score of 70, a Performance IQ score of 74, and a Full Scale IQ score of 69. In addition, the Wide-Range Achievement Test–4th Edition indicated that Justice's reading, writing, comprehension, and math skills placed him between the first and third percentile.

State psychologist Dr. Caroline Lewin rejected Dubey's diagnosis of mild mental retardation, however, and felt that the more appropriate diagnosis was borderline intellectual functioning, a less severe condition. Based on Justice's work history and ability to adequately perform activities of

daily living, Dr. Lewin concluded that Justice had moderate restrictions in work-related functioning, but no marked limitations. Furthermore, Dr. Lewin concluded that Justice would be capable of work that involved simple instructions and light labor in a low-stress setting.

State psychologist Dr. Donald McIntire also examined Justice and diagnosed him with major depression, panic disorder with agoraphobia, social phobia, and borderline intellectual functioning. Dr. McIntire noted that Justice has good attention skills and fairly good immediate recall memory, but poor working skills and concentration, as well as anxiety. Dr. McIntire concluded that Justice's ability to work around others was severely limited, his ability to maintain concentration to perform repetitive tasks was moderately impaired, his ability to complete complex tasks was severely impaired, but his ability to follow simple instructions and complete basic tasks was unimpaired.

Finally, Dr. Craig Thompson, a general internal physician, evaluated Justice and concluded that he had moderate limitations in his ability to concentrate and marked difficulty maintaining attention for more than a brief period of time. He found Justice's mental capabilities were not very advanced, but that "his main disability really is that he does not understand complex issues." R. 501.

In addition to the medical evidence, the ALJ considered Justice's daily activities, educational history, and work experience. Justice claims that he dropped out of school in the ninth or tenth grade, and at least some of his schooling was in special education classes. He is able to read, though not very well, and his mathematical skills are limited to addition and subtraction. He has worked as a light welder, material handler, factory laborer, heavy equipment operator, construction laborer, factory assembler, and painter. He claims that he eventually could not keep jobs involving hard

labor because they induced bouts of dizziness, breathing problems, and lightheadedness. Justice testified that he had trouble reading and asked for help with letters and paperwork. Although he assisted, he was not primarily responsible for any household chores, and could cook only basic things like hot dogs. He had a driver's license and had actually driven himself to his administrative hearing. He took his son to the movies, visited friends, and occasionally dated.

The ALJ also considered the testimony of vocational expert John R. Finch, who testified that a hypothetical person with Justice's vocational factors, as well as his physical and mental limitations,[1] would not be able to perform Justice's past work, but would be able to perform a number of available unskilled jobs at the light exertional level, including assembler, hand packer, and bench inspector. In a second hypothetical, the ALJ asked Finch to consider an individual with another set of limitations approximating Justice's.[2] Finch responded that this individual would not be able to perform Justice's past work but would be able to perform a number of available unskilled, sedentary jobs. Finch also testified that if he assumed Justice had testified truthfully, Justice would

---

[1] This first hypothetical individual could occasionally lift and carry up to fifty pounds and frequently lift and carry up to twenty-five pounds; could sit, stand and walk for about six hours each in an eight-hour workday; was limited from reaching in all directions with his left arm to frequently, as opposed to continuously, with no other exertional limitations; could cope with simple instructions in a low-stress setting; could relate to others; could concentrate on a short-term basis; and might occasionally need extra supervision on new tasks, particularly if the instructions were written rather than oral.

[2] This second hypothetical individual could stand for a total of four hours; could walk for a total of four hours (walking would be an hour at a time); could sit for eight hours total (sitting would be two hours at a time); could occasionally lift and carry up to twenty pounds; could use both of his hands for simple grasping, pushing and pulling, and fine manipulation; could not use his feet for repetitive movements such as operation of foot controls; could occasionally bend and climb steps, but never squat, crawl or climb ladders; could reach above shoulder level; and would be likely to deteriorate in a stressful situation associated with a job to the extent that he does not do well in any social/work situations due to social anxiety.

not be able to work, and Finch admitted, during cross-examination, that someone who was unable to maintain attention and concentration between twenty-five and fifty percent of the day would not be able to work.

In January 2010, the ALJ issued a decision denying benefits after conducting the five-step sequential analysis required under 20 C.F.R. § 404.1520 and concluding that Justice was not disabled. With respect to step three of that analysis, where the ALJ must consider the medical severity of the claimed impairment, the ALJ concluded that Justice did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Subpart P, Appendix 1 of 20 C.F.R. Part 404. The ALJ determined that Justice's "actual level of intellectual functioning is inconsistent with the requirements of § 12.05C" because of his work history and ability to "adequately manage most activities of daily living." R. 62. The ALJ credited the diagnosis of "borderline intellectual functioning" and rejected the more severe diagnosis of "mild mental retardation." *Id.*

As part of the step-five analysis, the ALJ was required to assess Justice's mental and physical residual functional capacity (RFC) to determine whether Justice could make an adjustment to other work. 20 C.F.R. § 404.1520. The ALJ found that Justice had the physical RFC to perform light work, subject to limitations in reaching, and the mental RFC to work in a low-stress environment requiring only short-term concentration and allowing for extra supervision on new tasks. The ALJ conceded that Justice would be unable to perform his past relevant work, but found that there were

jobs that exist in significant numbers in the national economy that Justice could perform, based on the testimony of the vocational expert and the RFC determination.

Justice sought review by the Appeals Council but was denied, leaving the ALJ's decision as the final agency action on the matter. Justice then filed this action in federal district court, seeking review of the ALJ decision. Justice argued that he was disabled because he met the listing requirements for mental retardation under Listing 12.05C, and that the ALJ's finding that Justice would be able to perform alternative jobs that exist in significant numbers in the national economy was unsupported by substantial evidence. The case was referred to a magistrate judge, who recommended affirming the ALJ's decision.

On the Listing 12.05C issue, the magistrate judge concluded that substantial evidence supported the ALJ's determination that Justice did not meet the requirements for mental retardation. The magistrate judge noted that although Justice met the IQ range and "impairment imposing an additional and significant work-related limitation of function" requirements in Subpart C, he did not establish "deficits in adaptive functioning" as required in the opening paragraph of Listing 12.05. Because Justice did not meet *both* the diagnostic description in the introductory paragraph and one of the four sets of criteria in Subparts A through D, the magistrate judge concluded that Justice did not make the required showing.

With respect to the ALJ's finding that Justice could perform available alternative jobs, the magistrate judge concluded that substantial evidence supported the ALJ's finding that Justice could perform a significant number of other jobs available in the national economy. The magistrate judge

rejected Justice's contention that the ALJ erred by not incorporating the mental RFC limitations when examining the vocational expert, because the ALJ was only required to incorporate those limitations he accepted as credible. The ALJ did not credit the methodology behind, and the ultimate conclusions of, the mental RFC assessment, and the magistrate judge found that substantial evidence supported the ALJ's decision not to credit or incorporate those limitations into his questioning. The magistrate judge concluded that substantial evidence therefore supported the ALJ's conclusion that Justice was capable of performing other jobs.

The district court adopted the magistrate judge's Report and Recommendation. Although the district court agreed that Justice did not meet the Listing 12.05C requirements, it differed in its view of which requirement Justice failed to meet; the court found that Justice met the requirements of "significant subaverage general intellectual function" and "deficits in adaptive functioning," as well as "a full scale IQ of 60 through 70," but did not establish "a physical or other mental impairment imposing additional and significant work-related limitation of function." The district court affirmed the ALJ's decision, and Justice filed this appeal.

The ALJ's finding that Justice's "actual level of intellectual functioning is inconsistent with the requirements of § 12.05C" was supported by substantial evidence because Justice failed to meet the "adaptive functioning" requirement. Listing 12.05C has four elements, derived from the introductory paragraph describing mental retardation and the additional elements listed under part C: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period, i.e. before age 22; (3) a valid verbal,

performance, or full scale IQ of 60 through 70; (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. § 404, Subpart P, App. 1, § 12.00, Listing 12.05C.

There is no controversy over elements (1) and (3) because both sides agree that Justice meets these requirements. Moreover, on this appeal, the Commissioner—consistent with the agency's briefing to the district court—concedes that "Justice satisfied the requirements of paragraph C," (elements (3) and (4)), but argues that "substantial evidence supports the ALJ's finding that he did not have the requisite deficits in adaptive functioning" under element (2). Commissioner's Br. at 26.

The agency determination was proper for the reason expressed in the magistrate judge's Report and Recommendation, notwithstanding the district court's seemingly different analysis. Our review of the district court is de novo, although that review is limited to determining whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). The ALJ's findings provide substantial evidence for the conclusion that Justice did not display a deficit in adaptive functioning initially manifested during the developmental period, based on the record evidence of Justice's work history and education, along with the medical reports. Justice has a lengthy work history, including a variety of semiskilled and unskilled positions. He also received unemployment benefits as late as 2007, which are conditioned on the unemployed beneficiary's being able and willing to work. Although Justice was enrolled in special education classes and

dropped out after the ninth or tenth grade, he acknowledges basic reading and mathematical proficiency. In addition, the medical reports credited by the ALJ support the less severe diagnosis of borderline intellectual functioning, rather than mental retardation, and indicate that Justice is able to adequately manage normal activities of daily living. This substantial evidence supports the ALJ's finding that Justice did not exhibit a deficit in adaptive functioning that was initially manifested during the developmental period.

Justice also argues that the ALJ decision failed to adequately address his disability claim under listing 12.05C. This argument rests on a misreading of the decision. The ALJ specifically discussed 12.05C and evaluated the evidence supporting its conclusion that Justice failed to meet the requirements of that listing. The mere fact that the ALJ also evaluated Justice's eligibility for disability benefits under other listings, such as 12.05D and 12.04, does not mean that it neglected to conduct an evaluation under 12.05C.

Justice also contends that the ALJ gave too much weight to the medical reports that weighed against him while giving too little weight to medical reports in his favor. The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject. Contrary to Justice's contention, the ALJ had the authority to make these determinations. Administrative law judges "are not bound by any findings made by State agency medical or psychological consultants, *or other program physicians or psychologists*." 20 C.F.R. § 404.1527(e)(2)(i) (emphasis added). Instead, the ALJ is charged with evaluating these experts' findings and reaching a reasoned determination as to the applicant's disability status. Here, the ALJ

considered the expert reports and provided a reasoned explanation for its finding that Justice did not

meet the listing 12.05C requirements. In a battle of the experts, the agency decides who wins. The

fact that Justice now disagrees with the ALJ's decision does not mean that the decision is

unsupported by substantial evidence.

Finally, Justice has not established that the ALJ improperly failed to consider evidence of his

mental RFC and thereby determined, without substantial evidentiary support, that Justice was

capable of substantial gainful activity. The ALJ could properly decide not to incorporate evidence

of Justice's mental impairments into his examination of the vocational expert because the ALJ is

only required to incorporate, as part of that examination, evidence that is deemed credible. *Parks*

*v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011) (citing *Casey v. Sec. of Health & Human*

*Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The ALJ excluded evidence of Justice's mental

limitations because the ALJ found that evidence was not credible.

Between steps three and four of the five-step analysis, the ALJ is required to determine the

applicant's residual functional capacity (RFC). With respect to mental RFC, the ALJ credited Dr.

Lewin's finding that Justice had some limitations but could perform tasks involving simple

instructions that required only short-term concentration, in a low-stress setting, especially if provided

additional supervision on newer tasks. The ALJ rejected Dr. McIntire's suggestion of severe mental

work-related limitations. The ALJ noted that Justice's "subjective complaints are disproportionate

with and not supported by the objective and substantial evidence in the record." R. 65. The ALJ

also rejected Dr. Thompson's assessment of mental work-related limitations because "he is not a

mental health professional and does not possess the specific knowledge to evaluate such functioning." *Id.* While Justice protests that this conclusion is somehow unfair or "legally incorrect," *see* Justice's Br. at 34, the ALJ is authorized to weigh conflicting medical evidence, taking into account, among other factors, an expert's "medical specialty and expertise." 20 C.F.R. § 404.1527(e)(2)(ii).

The ALJ incorporated all credible limitations into its examination of the vocational expert, who testified that Justice would be capable of performing unskilled, light exertional, sedentary jobs that exist in significant numbers in the national economy. The ALJ therefore determined, based on substantial evidence, that Justice was not disabled because he could perform a number of other available jobs.

The district court's judgment is affirmed.